## MARYLAND CASUALTY CO v. COMMONWEALTH COTTON OIL CO.

No. 26758. June 16, 1936.

Parke Davis, for plaintiff in error.

Wilson & Swank, for defendant in error.

WELCH, J. Plaintiff brought suit to recover an alleged balance of premiums due on two policies of workmen's compensation insurance written for the defendant covering the policy year periods from July 30, 1931, to July 30, 1932, and July 30, 1932, to July 30, 1933, respectively. The defendant denied any further liability and filed its cross-petition claiming a rebate of premiums as a result of overpayment thereof. A jury was waived and upon trial to the court plaintiff was denied relief, and the defendant recovered judgment as prayed in its cross-petition, and plaintiff has appealed.

The plaintiff's principal assignments of error are argued under its proposition "that the verdict of judgment rendered by the trial court was contrary to law." In considering that proposition we are governed by the rule announced in paragraph one of the syllabus in Schafer et al. v. Lee, 64 Okla. 106, 166 P. 94, as follows:

"Where a case is tried to the court without a jury, the findings of the court upon disputed questions of fact will be given the same weight and effect as the verdict of a jury, and, where reasonably supported by the evidence, will not be disturbed in the Supreme Court."

And to the same effect, see Stone v. Stone, 66 Okla. 123, 168 P. 423; Scott v. Iman, 74 Okla. 13, 176 P. 81; Ward v. Feldman, 122 Okla. 176, 253 P. 51.

The evidence supports the following statement of facts: Plaintiff is a corporation engaged in the business of writing policies of workmen's compensation insurance within this state. The defendant corporation operates a cotton seed oil mill and some 16 or 18 cotton gins located at various points within the state, and is an employer of numerous persons within the terms of the Workmen's Compensation Law of this state.

The plaintiff, through its local agent at Cushing, where the defendant's principal office is located, solicited of the defendant the writing of its employees' liability insurance. It appears that prior thereto the defendant had carried such insurance with other companies, and its employees, designated as "gin managers," had been classified as clerical employees in the matter of calculating the rate of premium to be charged upon the policies with reference to such employees. Plaintiff's local agent and the defendant's managing agent, upon such solicitation, discussed such classification, and upon agreement of the defendant to purchase plaintiff's policy it was understood that such employees would be so classified in calculating the premiums to be paid under the policy to be issued by the plaintiff.

The policy was issued by the plaintiff and delivered to and accepted by the defendant upon a down payment or "advance deposit premium of $600." The terms of the policy provided that a report would be made to plaintiff quarterly throughout the policy year showing the number of employees, character of their employment, and the amount of their compensation, and that the books, records, plants, and premises would be open at all reasonable times to investigation and inspection by the plaintiff's auditors and agents.

It was further provided that the final amount of premium due under the policy should be calculated from these reports and audits, and paid quarterly. The policy further provided that the premium rates should be calculated as prescribed by the Oklahoma Workmen's Compensation Insurance Manual. This manual prescribed the premium rates to be charged with reference to the various classifications of employees as established by the State Insurance Board. Thereafter such quarterly reports were made during the entire period covered by the policies involved. Most of these quarterly reports were prepared by or in collaboration with a duly authorized auditor of the plaintiff company upon his personal appearance at the office of the defendant in Cushing, and payment of premium was made in accordance with such reports and audits, which classified the gin managers as "clerical employees" with no question being raised relative thereto by either of the parties. Several months after expiration of the second policy, plaintiff's auditor, who was a different man than the one who had previously audited the reports, accounts, and

books of the defendant for plaintiff, appeared at the defendant's office in Cushing for the purpose of making a final audit in connection with the second policy. Upon completion of this audit there arose the first dispute between the parties here. At that time the plaintiff's auditor took the position that under the policy and under the Workmen's Compensation Manual the plaintiff's employees designated as "gin managers" should be classified along with the regular cotton gin laborers and workmen.

Such classification carried a premium rate, as prescribed by the manual, of 7.158 per $100 per month salary. On the other hand, the defendant contended that such "gin managers" should be and were in fact classified as "clerical employees," which classification under the manual appears to have carried the rate of .066. Other facts will appear in our discussion.

Plaintiff's theory is that the insurance contract and the Compensation Insurance Manual, when construed together, result in a specific agreement on the part of the insured to pay 7.158 per $100 per month remuneration for each employee termed in our discussion "gin managers" and that by reason of such agreement the defendant is liable for the amount sued for. Defendant's theory is that a proper construction of the rates and classifications contained in the manual, together with the Workmen's Compensation Law, results in properly classifying said gin managers as "clerical employees," and therefore subject to the prescribed rate of .066. It is admitted that if calculation of the premium is made at 7.158, the plaintiff should recover $1,085, and that if calculated at the rate of .066, the defendant should recover $630.24.

It is the defendant's further theory that, notwithstanding the question of the true classification that should have been applied to the gin managers, the plaintiff is now estopped from claiming a classification different from that which was in good faith made, with full knowledge of the facts upon the part of both parties to the contract, and payment of the premium having been made and accepted by the plaintiff without objection until long after the expiration of both policies involved. An examination of the policy itself does not disclose the exact amount of premium to be paid. The policy, construed with the Compensation Insurance Manual, does not disclose what these figures should be. It cannot be ascertained from an examination of both the policy and the Workmen's Compensation Insurance Manual just what rate should be paid as to any given individual. It, therefore, follows that the ultimate rate and the classification must be ascertained from facts to be gathered outside of the policy and the Insurance Manual. The policy provides the method of ascertaining these facts without which the amount of the premium cannot be known. It provides for the quarterly disclosure of these facts to the insurance company, and provides that the insurer may investigate such facts. After these facts are ascertained and investigated, it then becomes necessary that a conclusion be reached, particularly with reference to whether certain individuals should be classed as clerical employees or otherwise. The number of employees, the amount of their salaries, and the nature of their duties may be constantly changing, and it is therefore a part of the agreement, as clearly evidenced thereby, that the parties at stated intervals would agree upon or be governed by what such facts revealed. And when the parties, acting in conformity with the arrangements made to ascertain these facts, have made full and complete disclosure and investigation of the facts without fraud or collusion, it is our opinion that the conclusion reached from the facts as to classification is a further agreement within the terms and contemplation of the contract, and that the agreement so reached is not subject to repudiation except possibly upon the ground of mistake in cases where the principles of estoppel do not apply.

We take it there can be no doubt that the higher rate is intended to cover only such employees as are contemplated within the terms and provisions of the Workmen's Compensation Law, as the policy specifically provides that it insures against such liability only. The Workmen's Compensation Law is referred to and made a part of the contract, and should receive consideration in the construction thereof. Whether or not the employees, regarding whom the controversy arose, come within the terms of the Workmen's Compensation Law depends upon the facts in each individual case. The record here clearly supports the conclusion that upon investigation of the facts, the parties concluded and thereby agreed that such employees, engaged as they were in defendant's business, were clerical employees and not embraced within the provisions of the Workmen's Compensation Law or the terms of the contract with reference to the 7.158 rate. Such conclusion, reached with knowledge of the facts and without fraud or collusion, is equivalent to an agreement

which we think is not subject to inquiry in a case where there appears substantial elements of estoppel.

In this case the facts relating to the duties of these gin managers appear to have caused both the insurance company and the defendant to conclude in good faith that they were properly classified as "clerical employees." There is no plea or proof of fraud or concealment of facts. The policies were taken with the understanding that such employees were properly so classified. Reports were made as provided by the contract. Audits were made and payment of the amount of the premium which the audits and reports revealed to be due was made quarterly throughout the entire two-year period of time covered by the policies, and no suggestion was made by the plaintiff that the facts revealed that the gin managers should be classified otherwise until some two months after the expiration of the last policy. It is our opinion that under such facts and circumstances the plaintiff should not now be heard to change the conclusion reached from the facts investigated. Had the defendant known that the classification was wrong, or that plaintiff so contended, or that plaintiff desired to change the classification, then defendant would have had the right, if desired, to discontinue the use of these employees or to change their duties, or in some manner to protect itself from a premium charge which it did not suspect would be applied. Its position has been materially changed, and it should not now be subjected to a re-examination of the facts which formed the conclusion and agreement that these employees be classified as clerical employees.

The judgment is affirmed.

OSBORN, V. C. J., and RILEY, BUSBY, CORN, and GIBSON, JJ., concur. McNEILL, C. J. and BAYLESS and PHELPS, JJ., absent.